Collette L. Adkins (MN License No. 035059X)
CENTER FOR BIOLOGICAL DIVERSITY
P.O. Box 595
Circle Pines, MN 55014-0595
(651) 955-3821
cadkins@biologicaldiversity.org

Marc D. Fink (MN License No. 0343407)
CENTER FOR BIOLOGICAL DIVERSITY
209 East 7th Street
Duluth, MN 55805
(218) 464-0539
mfink@biologicaldiversity.org

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| **CENTER FOR BIOLOGICAL DIVERSITY**,<br><br>Plaintiff,<br><br>v.<br><br>**SARAH STROMMEN**, in her official capacity as Commissioner of the Minnesota Department of Natural Resources,<br><br>Defendant. | Case No. _____<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

## INTRODUCTION

1.      The Center for Biological Diversity ("the Center") brings this case against Sarah Strommen, in her official capacity as Commissioner of the Minnesota Department of Natural Resources ("the DNR"), for violating the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531-1544. Specifically, the DNR authorizes recreational and commercial wildlife trapping that is injuring and killing the Canada lynx (*Lynx canadensis*), a beautiful wild cat protected under the ESA. 16 U.S.C. §§ 1538(a)(1)(B), 1533(d); 50 C.F.R.§ 17.40(k). Despite a previous court order

Page 1

establishing the DNR's liability for unlawful "take" of lynx, the DNR still authorizes trapping that continues to harm lynx without the necessary permit from the U.S. Fish and Wildlife Service ("FWS").

2. Through this litigation, the Center asks the Court for an order declaring that the DNR is violating the ESA and enjoining DNR-authorized trapping that risks further lynx injuries and deaths.

## JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. §§ 2201-2202 (declaratory judgments and further relief), and 16 U.S.C. § 1540(c), (g)(1)(A) (action arising under the ESA and the ESA citizen suit provision). The Center has properly given notice to the DNR of its claim in accordance with 16 U.S.C. § 1540(g)(2)(A)(i). The DNR has not remedied this violation of law and an actual controversy exists between the parties within the meaning of the Declaratory Judgment Act, 28 U.S.C. § 2201.

4. Venue is proper in this judicial district because the alleged violation of law is occurring here and the DNR's headquarters are located here. 16 U.S.C. § 1540(g)(3)(A); 28 U.S.C. § 1391(b).

## PARTIES

5. Plaintiff CENTER FOR BIOLOGICAL DIVERSITY ("the Center") is a nonprofit organization dedicated to the protection and restoration of biodiversity. The Center is based in Tucson, Arizona, with staff and offices throughout the country, including in Minnesota. The Center has over 81,000 members, including many who live within the Canada lynx's current

range in Minnesota, where lynx have been trapped.

6. Because the Center values the Canada lynx, the Center places high priority on protecting and recovering the species across its range. The Center works toward this goal through education, advocacy, scientific study, and litigation.

7. For example, in 2006 the Center brought a case against the DNR for its authorization of trapping that killed and harmed Canada lynx in violation of the ESA. As a result of that successful litigation, the Court ordered the DNR to issue new regulations to restrict trapping in northeastern Minnesota. As a more recent example of the Center's lynx-centered advocacy, the Center last year submitted detailed, scientific comments on the status of and threats facing lynx across the country.

8. The Center's members live, work, recreate, and study in areas throughout the lynx's current range in Minnesota, including where Canada lynx have been trapped. In such areas, the Center's members frequently engage in hiking, camping, snowshoeing, skiing, wildlife watching, photography, dog-walking, and other activities, and will continue to do so. The Center's members enjoy seeing lynx and other wildlife and their signs (like tracks and scat) and would like to see the lynx population fully recover in Minnesota and across the country. The Center and its members rely on the DNR to comply fully with the ESA, which prohibits citizens from trapping – and state agencies from allowing the trapping – of federally listed species such as the Canada lynx.

9. The Center's members have suffered, and will foreseeably continue to suffer, direct injuries to their recreational, aesthetic, scientific, professional, spiritual, and other interests and activities because of the DNR's authorization of trapping that kills or harms lynx and other wildlife. Specifically, the DNR's recreational and commercial trapping program threatens the

Center's interests in observing lynx and other wildlife and their signs because, as a result of trapping, the Center's members will have fewer opportunities to observe wildlife including Canada lynx.

10. In addition, the Center's members are injured because the very animals that they enjoy looking for and observing could be killed or injured by DNR-authorized trapping. The Center's members are also harmed by the possibility that they may witness trapped animals or animals suffering from trapping injuries. Finally, they are harmed because of the risk that trapping poses to family dogs, which, like lynx, are accidentally caught in traps set for other animals.

11. These are actual, ongoing, concrete injuries, traceable to the DNR's authorization of trapping, that would be redressed by the relief requested. Specifically, if the Court enjoins DNR-authorized trapping that may cause take of Canada lynx, then lynx conservation and the interests of the Center and its members in the species and individual lynx would be furthered. In addition, Court-ordered restrictions on trapping would lower the risk that the Center's members would witness lynx or other wildlife killed or injured by trapping or that their family dogs would be caught in traps.

12. Defendant SARAH STROMMEN is the Commissioner of the Minnesota Department of Natural Resources, which is the state agency tasked with conservation and management of the state's natural resources. The Commissioner is responsible for making decisions and promulgating regulations under Minnesota law that affect the state's natural resources, including licensing and regulation of recreational and commercial wildlife trapping. She is also responsible for ensuring compliance with federal laws such as the ESA. She is sued in her official capacity.

# BACKGROUND

**A.     Natural History and Status of the Canada Lynx**

13.     The Canada lynx (*Lynx canadensis*) is a rare wild cat, similar in appearance to a bobcat but characterized by tufted ears, hind legs that appear longer than front legs, and a pronounced goatee under the chin. Its large paws work like snowshoes and enable walking on top of deep, soft snows. This cold-loving cat feeds predominantly on snowshoe hares but also eats birds and small mammals and scavenges carcasses. Mating occurs in late winter, and up to five kittens are born approximately sixty-five days later. Kittens remain with and depend on their mother for one year before dispersing to their own home range.

14.     Low population numbers – in part due to trapping and other inadequate regulatory mechanisms – led FWS to list Canada lynx as a threatened species under the ESA in 2000. 65 Fed. Reg. 16,052 (Mar. 24, 2000). FWS designated critical habitat in 2006 with revisions in 2009 and 2014. 79 Fed. Reg. 54,781 (Sept. 12, 2014). The critical habitat designation includes northeastern Minnesota.

15.     Trapping, habitat destruction, climate change, and other threats continue to harm the Canada lynx today. Minnesota is one of the few places left in the United States that contains lynx habitat with the quality and quantity to sustain lynx populations. Currently, biologists estimate that 50 to 200 lynx may range in the northern part of Minnesota.

**B.     The ESA Prohibits Unpermitted "Take" of Canada Lynx**

16.     Recognizing that "species of fish, wildlife, and plants are of aesthetic, ecological, educational, historical, recreational, and scientific value to the Nation and its people," 16 U.S.C. § 1531(a)(3), Congress designed the ESA to "provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved, [and] to provide a

Page 5

program for the conservation of such endangered species and threatened species." 16 U.S.C. § 1531(b).

17. Principal among the ESA's system of species protection is section 9's prohibition on take of listed species. 16 U.S.C. § 1538(a)(1)(B); *see* 50 C.F.R. § 17.31. To "take" means to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or attempt to engage in any such conduct. 16 U.S.C. § 1532(19). "Take" includes direct as well as indirect harm and need not be purposeful. *See* 50 C.F.R. § 17.3 (definitions of "harass" and "harm"); *Babbitt v. Sweet Home Chapter of Cmtys. for a Great Or.*, 515 U.S. 687, 704 (1995). "Take is defined in the broadest possible manner to include every conceivable way in which a person can 'take' or attempt to 'take' any fish or wildlife." *Defs. of Wildlife v. Adm'r, EPA*, 882 F.3d 1294, 1300 (8th Cir. 1989).

18. The Canada lynx is protected as a threatened species under the ESA and receives the same protections as an endangered species through operation of a special rule promulgated under section 4(d) of the ESA. 16 U.S.C. § 1533(d) ("The Secretary may by regulation prohibit with respect to any threatened species any act prohibited under section 1538(a)(1) of this title."); 50 C.F.R. § 17.31 (applying the take prohibition to "to threatened species of wildlife that were added to the List of Endangered and Threatened Wildlife in § 17.11(h) on or prior to September 26, 2019"); 50 C.F.R. § 17.40(k) ("All prohibitions and provisions of 50 C.F.R. 17.31 and 17.32 apply to wild lynx found in the contiguous United States."). As such, the take of lynx is prohibited under the ESA.

19. The ESA's take prohibition applies to state agencies like the DNR. It is unlawful for "*any* person" to "cause [an ESA violation] to be committed." 16 U.S.C. § 1538(g) (emphasis added). The term "person" includes "any officer, employee, agent, department, or instrumentality

… of any State." 16 U.S.C. § 1532(13); *see Animal Prot. Inst. v. Holsten*, 541 F. Supp. 2d 1073, 1078 (D. Minn. 2008) (summarizing cases and holding the DNR liable for its trapping program that had caused the take of Canada lynx).

20. The ESA has a broad citizen suit provision that reaches state agencies: "any person may commence a civil suit on his own behalf to enjoin any person, including [any] governmental instrumentality or agency . . . who is alleged to be in violation of any provision of [the ESA]." 16 U.S.C. § 1540(g); *see Ex parte Young*, 209 U.S. 123, 159-60 (1908) (authorizing lawsuits for prospective relief against state officials acting in violation of federal law).

21. The taking of a threatened or endangered species that is "incidental" to the purpose of otherwise lawful activity may be allowed if permitted through an incidental take permit ("ITP") issued under section 10 of the ESA. 16 U.S.C. § 1539(a)(1)(B). As a prerequisite to receiving an ITP from FWS, the applicant must submit a habitat conservation plan that specifies:

> (i) the impact which will likely result from such taking; (ii) what steps the applicant will take to minimize and mitigate such impacts, and the funding that will be available to implement such steps; (iii) what alternative actions to such taking the applicant considered and the reasons why such alternatives are not being utilized; and (iv) such other measures that the Secretary may require as being necessary or appropriate for purposes of the plan.

*Id*. § 1539(a)(2)(A). Thereafter, FWS must find, with respect to the permit application and the habitat conservation plan, that the applicant will "minimize and mitigate" the impacts of take "to the maximum extent practicable," that the applicant has adequate funding to carry out the plan, and that the incidental take will not appreciably reduce the likelihood of survival of the species. *Id.* § 1539(a)(2)(B).

Page 7

C.     **The DNR Held Liable for Illegal Take Yet Still Lacks ITP**

22.    In 2006, the Animal Protection Institute and the Center for Biological Diversity brought a case against the DNR for authorizing trapping that resulted in illegal incidental take of Canada lynx. The wildlife protection groups offered evidence of "at least 13 reported instances of the trapping or taking of Canada Lynx in Minnesota since 2002 that have resulted in either injury or death to the subject lynx." *Animal Prot. Inst. v. Holsten*, 541 F. Supp. 2d 1073, 1075-76 (D. Minn. 2008).

23.    The Court held that the DNR "has violated and remains in violation [of] Section 9 of the Endangered Species Act by authorizing trapping and snaring within the range of Canada Lynx in Minnesota." *Id*. at 1081. It reasoned that the DNR's application for an ITP did not moot the case, and that the plaintiffs could seek relief "until such time as the permit is issued." *Id*. at 1077. In rejecting the defendants' arguments that conduct of the trappers is an independent, intervening cause that relieves the DNR of liability, the Court held that "the DNR's licensure and regulation of trapping is the 'stimulus' for the trappers' conduct that results in incidental takings." *Id*. at 1079. The Court also held that the Tenth Amendment did not bar "an order directing the DNR to bring its trapping scheme into compliance with federal law." *Id*. at 1081.

24.    The Court directed the DNR to "promptly take all action necessary to insure no further taking of threatened Canada Lynx by trapping or snaring activities within the core Canada Lynx ranges, including, but not limited to" the following: (1) applying to FWS for an ITP for Canada lynx for the DNR's trapping program, on or before April 30, 2008; and (2) developing and preparing a proposal to be submitted to this Court on or before April 30, 2008, "to restrict, modify, or eliminate … the incidental taking of Canada Lynx through trapping activities in the core Canada Lynx ranges." *Id*. at 1081.

25. The DNR applied for an ITP by submitting to FWS an ITP application and draft habitat conservation plan. *Animal Prot. Inst. & Ctr. for Biological Diversity v. Holsten*, No. 06-3776, 2008 U.S. Dist. LEXIS 53396 (D. Minn. July 13, 2008). In addition, the DNR filed with the Court a "Proposal of the Minnesota Department of Natural Resources to Restrict, Modify, or Eliminate the Incidental Take of Canada Lynx," which it later modified. *Id*. The Court concluded that the DNR's modified proposal, as well as its ITP application and habitat conservation plan, were "adequate and in compliance with this Court's Order of March 28, 2008." *Id*. The Court ordered the DNR to promulgate rules consistent with the modified proposal prior to the 2008-2009 trapping season. *Id*.

26. The DNR has promulgated several sets of "expedited emergency rules" that implement its modified proposal, as further explained below.

27. Records received in response to a request under the Freedom of Information Act, 5 U.S.C. § 552, and email correspondence with staff from the DNR and FWS shows that the DNR failed to obtain an ITP from FWS even though lynx continue to be killed and injured by trapping in Minnesota.

28. On December 4, 2019, the Center notified the DNR of its intent to sue the agency for violating the ESA by authorizing trapping that takes Canada lynx in Minnesota.

29. In its February 5, 2020 response to the Center's notice, the DNR admits that its trapping program has caused "an average of one deceased lynx every two years since 2008." Nevertheless, it states that the agency "is in full compliance with the Court's July 2008 Order, and, therefore, is in full compliance with the ESA."

30. However, given that the DNR has not received an ITP, its compliance with the 2008 Court order cannot insulate the agency against liability for subsequent take of Canada lynx

caused by its trapping program.

**D.     Trapping of Canada Lynx in Minnesota**

31.     The DNR oversees licensing and regulation of trapping in Minnesota by setting seasons, bag limits, and other restrictions. Minn. Stat. § 97B.605; Minn. R. chapter 6234.

32.     While the DNR prohibits trapping of Canada lynx, Minn. R. 6234.1500, it continues to authorize trapping for bobcats, fishers, martens, fox, wolves (upon removal of federal protections), and other species within lynx habitat. Minn. R. chapter 6234. It also incentivizes the trapping of coyote and fox by providing compensation for such "predator control." Minn. R. 6234.3400.

33.     For the 2019-2020 trapping season, the DNR reported the "harvest" of 695 bobcats, 463 fishers, and 585 martens. During that season, 297 trappers took bobcats, 360 trappers took fishers, and 391 trappers took martens. Lynx are vulnerable to being caught in traps set for these other animals.

34.     The trap types primarily used by trappers in Minnesota are: (1) "foothold" or "leghold" traps with spring-loaded jaws designed to clamp down and hold the animals by their foot or leg; (2) "conibear" or body-gripping traps designed to kill the animals by crushing their bodies; and (3) "snares" made of wire or cable designed to catch animals by their foot, neck, or body, which tightens when the animals try to free themselves. All three trap types can injure or kill Canada lynx.

35.     The DNR allows trappers to use unlimited numbers of all these types of traps. Minn. R. 6234.2200-2400.

36.     The DNR allows some traps to remain unattended for up to three days. Minn. R. 6234.2200.

37. As a result of documented take of Canada lynx, the resulting litigation, and the 2008 Court order, the DNR added some restrictions to the use of snares and traps in areas where lynx are known to live. Specifically, the DNR has promulgated several subsequent sets of "expedited emergency rules" that remain effective for no longer than 18 months. *See* Minn. Stat. § 84.027. Those rules temporarily amend Minn. R. 6234.1000 (Description of Furbearer Zones), Minn. R. 6234.2200 (Use of Traps), and Minn. R. 6234.2400 (Special Restrictions on Use of Snares). *See* 2018 MN Regulation Text 3347 (Adopted Expedited Emergency, May 7, 2018). The DNR has not promulgated any permanent rules restricting trapping to protect lynx.

38. In the Minnesota Hunting and Trapping Regulation booklet, these lynx-specific restrictions are summarized as the "Lynx Management Zone Regulations." The Lynx Management Zone covers the arrowhead region of the state, northeast of U.S. Highway 53. In that Zone, snare traps must be at least eight inches wide and at least 5/64 inches in diameter. All foothold traps must be staked or secured by cables less than eighteen inches long with at least two swivels. All traps must be secured in a way that prevents captured animals from removing the trap from the trap site. Using fresh meat, rabbits or hares, or parts of rabbits or hares, as bait is prohibited. Other meat may be used as bait if it has been unfrozen and exposed to air for at least twenty-four hours before being placed in a trap. Using suspended flags or other sight attractants within twenty feet of a trap is prohibited. Except when set underwater, a body-gripping (conibear-style) trap that has a maximum jaw opening, when set, of greater than five inches and less than 7 1/2 inches, measured from the inside edges of the body-gripping portions of the jaws, must be set: (1) at least three feet above the ground or snow level in a tree or on a leaning pole six inches or less in diameter; or (2) in a cubby box recessed at least seven inches from the box opening, which must be less than 50 square inches in opening size.

39. Because the DNR continues to authorize trapping where lynx live, trappers continue to lawfully do so, and Canada lynx continue to be incidentally killed or captured in these traps, even after promulgation of the Lynx Management Zone Regulations.

40. Below is a photo of a lynx captured in a trap in Minnesota:



41. On December 1, 2009, a male lynx was caught in a lawful leghold trap set for fisher and marten in St. Louis County. The lynx pulled itself out of the trap when the trapper approached.

42. On October 28, 2011, a female lynx was caught in a lawful leghold trap set for fox in Lake County. The lynx died during an attempted release with a catchpole around her neck.

43. On January 20, 2012, a male lynx was caught in a lawful snare set by a tribal trapper for bobcat in Cass County. The lynx died.

44. On March 15, 2012, a female lynx was found dead near Armstrong Lake in St. Louis County. Necropsy showed that the lynx had been caught by its right hind leg in a snare and

died. Its right foreleg appeared to have been healing from a fracture, likely from recent capture in a leghold trap.

45. On November 24 or 25, 2013, a male lynx was caught in a lawful leghold trap set for fox in Lake County. The lynx was released alive.

46. On November 30, 2013, a lynx of unknown sex was caught by its right front foot in a lawful body-gripping trap set by a tribal trapper on a leaning tree in a meat-baited cubby box in Cook County. Based on tracks left in the snow, it appears that the lynx pulled itself out of the trap.

47. On December 21, 2013, a lynx of unknown sex was caught in a lawful cage trap set for bobcat in St. Louis County. The lynx was released alive.

48. On February 15, 2014, a male lynx was caught in a lawful snare set for coyote in Koochiching County. The lynx died.

49. On November 30, 2014, a lynx of unknown sex was caught in a lawful leghold trap set for wolves in Rosseau County. The lynx was released alive.

50. On December 27, 2014, a male lynx was caught by the torso in a lawful deer-baited snare for coyote in Koochiching County. The lynx died.

51. On December 29, 2014, a male lynx was caught in a lawful snare set in Koochiching County. The lynx died.

52. On June 25, 2015, a female lynx was caught in a leghold trap set by researchers targeting wolves in Lake County. The lynx was released alive.

53. On August 23, 2016, a male lynx was caught in a leghold trap set by researchers targeting wolves in Lake County. The lynx was released alive.

54. On December 1, 2017, a male lynx was caught in a lawful snare set for bobcat in

Lake County. The lynx died.

55.     On November 25, 2018, a lynx of unknown sex was caught in a lawful deer-meat and skunk-scent baited leghold trap set for marten on the ground in a natural cubby in St. Louis County. The lynx escaped with the trap still attached to its foot. The trappers cornered the lynx in heavy cover and removed the trap using a notched plywood shield.

56.     These documented cases of trapped Canada lynx in Minnesota occurred after implementation of the new trapping restrictions, specifically since the start of the 2008-2009 trapping season.

57.     These documented cases of trapped Canada lynx occurred both in and outside of Minnesota's Lynx Management Zone. Below is a map of these documented cases:



58. In addition, many trapped lynx may go unreported by trappers. Indeed, FWS noted concerns with unreported Canada lynx trapping when it listed the species under the ESA, stating:

> We know that lynx are taken during legal trapping and hunting for other species, such as wolverine and bobcat, even when lynx seasons are closed. We do not know how many lynx may be purposefully poached, but are concerned about radio-collared lynx that have been killed but not reported. No reliable recordkeeping exists to determine how frequently such taking occurs, nor if it has increased because of the increasing accessibility of forests.

65 Fed. Reg. 16,052, 16,080 (Mar. 24, 2000) (internal citations omitted).

59. FWS has also estimated that for every reported incidental take of lynx, one incidental take remains unreported.

60. Even though some trapped lynx may be released alive, they still experience harm and may not survive after release. Animals trapped for prolonged periods can experience reduced mobility and survival due to injury, limping, and tissue necrosis that may take days to appear, or an inability to catch prey due to broken teeth or claw loss. Even temporary immobility causes adverse physiological responses in trapped and struggling animals, including anxiety, stress, and pain that change hormone, enzyme, and electrolyte levels as well as muscle pH. When mother lynx are trapped, the harm extends to yearling lynx or kittens dependent on their mothers for survival.

## CLAIM FOR RELIEF

### ESA Section 9: Unauthorized Take of Canada Lynx

61. The Center hereby realleges and incorporates all preceding paragraphs.

62. The ESA prohibits take of Canada lynx unless authorized through an incidental take permit. 16 U.S.C. §§ 1538(a)(1)(B), 1533(d); 50 C.F.R. §§ 17.31, 17.40(k).

63. The DNR authorizes recreational and commercial trapping that has taken and will continue to take Canada lynx. Even after the DNR implemented new trapping restrictions in 2008, at least ten Canada lynx have been captured in traps set pursuant to the DNR's trapping program. At least five of these captures resulted in the confirmed death of a lynx.

64. The DNR has not received an incidental take permit to cover the taking of lynx pursuant to its trapping program. *See* 16 U.S.C. § 1539(a)(1)(B).

65. As such, the DNR's trapping program violates section 9 of the ESA. 16 U.S.C. § 1538(a)(1)(B).

## REQUEST FOR RELIEF

The Center respectfully requests that the Court grant the following relief:

A. Declare and adjudge that the DNR's authorization of recreational and commercial trapping in Minnesota results in the taking of Canada lynx without a permit, in violation of section 9, 16 U.S.C. § 1538(a)(1)(B);

B. Enjoin the DNR from authorizing trapping that risks further injuries and death to Canada lynx;

C. Enter such further relief as the Center hereinafter specifically requests to remedy the DNR's violation of law;

D. Award the Center its reasonable fees, costs, and expenses associated with this litigation under 16 U.S.C. § 1540(g)(4); and

E. Grant such further and other relief as the Court deems just and proper to remedy the DNR's violation of law.

Respectfully submitted this 17th day of December, 2020.

/s/ Collette L. Adkins

Collette L. Adkins (MN License No. 035059X)
CENTER FOR BIOLOGICAL DIVERSITY
P.O. Box 595
Circle Pines, MN 55014-0595
(651) 955-3821
cadkins@biologicaldiversity.org

Marc D. Fink (MN License No. 0343407)
CENTER FOR BIOLOGICAL DIVERSITY
209 East 7th Street
Duluth, MN 55805
(218) 464-0539
mfink@biologicaldiversity.org

*Attorneys for Plaintiff*