UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

CENTER FOR BIOLOGICAL
DIVERSITY,

       Plaintiff,

  v.

SARAH STROMMEN, in her official
capacity as Commissioner of the Minnesota
Department of Natural Resources,

       Defendant,

and

MINNESOTA TRAPPERS
ASSOCIATION, NATIONAL TRAPPERS
ASSOCIATION, AND FUR TAKERS OF
AMERICA, INC.

       Defendant-Intervenors.

CASE NO. 20-2554-ECT-JFD

**CONSENT DECREE AND ORDER**

Upon consideration of the Motion for Entry of Consent Decree and Order, it is hereby ORDERED, ADJUDGED AND DECREED as follows:

### I. BACKGROUND

1. Plaintiff Center for Biological Diversity ("the Center") brought this suit against Defendant Sarah Strommen, in her official capacity as the Commissioner of the Minnesota Department of Natural Resources ("the DNR"), under the federal Endangered

Species Act ("ESA"), 16 U.S.C. §§ 1531-1544.  The Center and the DNR are referred to collectively as "the Parties."[1]

2. The Parties recognize and the Court, by entering this Consent Decree and Order (the "Decree"), finds that this Decree has been negotiated in good faith; settlement will avoid continued litigation between the parties; settlement of this matter is in the public interest and in accordance with the ESA; and entry of this Decree is fair and reasonable.

## II.     JURISDICTION

3. This Court has jurisdiction over the Parties and subject matter of this Decree pursuant to 28 U.S.C. § 1331 and 16 U.S.C. § 1540(g).

## III.    APPLICABILITY

4. The provisions of this Decree shall apply to and be binding upon the Parties; any successor to Commissioner Strommen as Commissioner of the DNR; all DNR personnel who are subordinate to Commissioner Strommen or any successor Commissioner of the DNR; and the Center's directors, successors, employees, and attorneys.

## IV.    NO ADMISSION OF WRONGDOING OR LIABILITY

5. This Decree constitutes a settlement by the Parties of disputed claims as alleged in the Complaint filed in this case.  The DNR, by entering into this Decree, makes no admission of wrongdoing, and expressly denies any liability.

---

[1] On March 9, 2022, the Court allowed the Minnesota Trappers Association, National Trappers Association, and Fur Takers of America, Inc. to intervene as defendants ("the Defendant-Intervenors").  The Defendant-Intervenors are not party to this Decree.

### V.  COMPLIANCE

6. By whatever regulatory means are necessary, including expedited emergency rulemaking, the DNR shall, within 40 days after this Decree becomes effective, publish a rule in the State Register that imposes the following additional restrictions on trapping activities in the geographic area known as the Lynx Management Zone, as defined in Minn. R. 6234.1000, subp. 5:

   a. In the Lynx Management Zone, snares, except when placed as water sets, must be equipped with: (i) a minimum loop stop that prevents the snare loop from closing to a diameter less than 3 ¼ inches; and (ii) a one-piece snare lock that contains no moving parts, has no integrated or attached compression springs, and has a side that contacts the animal that is a minimum of ½ inch in width.

   b. In the Lynx Management Zone, snares, except when placed as water sets, may not be attached or anchored to a fence or tree, and may not be set in a location such that they, when fully extended, can reach any part of a fence, or any rooted vegetation greater than ½ inch in diameter.

   c. In the Lynx Management Zone, snares, except when (i) placed as water sets or (ii) used by a licensed wolf trapper as a "wolf snare" within the meaning of Minn. R. 6234.0900, subp. 6, may not exceed 7 feet in length from the anchor point to the end of the snare when fully extended.

   d. In the Lynx Management Zone, snares, except when placed as water sets, must be equipped with at least 1 swivel.

   e. In the Lynx Management Zone, a person may not set, place, or operate any foothold trap that has a maximum jaw opening, when set, of greater than 6 ½ inches measured from the inside edges of the jaw, except when (i) placed as a water set or (ii) used by licensed wolf trappers during a wolf season.

7. The DNR shall maintain, by whatever regulatory means are necessary, including expedited emergency rulemaking, the trapping restrictions that are currently in effect in the Lynx Management Zone as a result of the Court's Order in *Animal Protec.*

*Inst. v. Holsten*, No. 06-CV-3776 (MJD/RLE), ECF No. 163 (July 14, 2008) ("the 2008 Order").

8. The terms of the 2008 Order are incorporated into this Decree by reference and the DNR shall continue to abide by the terms of the 2008 Order.

9. The DNR shall take the following steps to educate the public about the additional trapping restrictions identified in Paragraph 6(a)-(e):

   a. Upon publication of the rule in the State Register, make information about the additional trapping restrictions available on the "Trapping & furbearers" webpage, which is located at https://www.dnr.state.mn.us/recreation/hunting/trapping/index.html.

   b. Upon publication of the rule in the State Register, issue a press release and send a notice through Gov. Delivery about the additional trapping restrictions.

   c. If this Decree becomes effective on or before June 15, 2022, incorporate information about the additional trapping restrictions into the online and printed versions of its 2022-23 *Minnesota Hunting & Trapping Regulations* booklet. If this Consent Decree and Order becomes effective on or after June 16, 2022, incorporate information about the additional trapping restrictions into the online and printed versions of its 2023-24 *Minnesota Hunting & Trapping Regulations* booklet.

10. Upon publication of the rule in the State Register, the DNR shall include on the "Trapping & furbearers" webpage a link to pages 17-19 of the lynx avoidance brochure, which is located at https://files.dnr.state.mn.us/recreation/hunting/trapping/avoidlynx.pdf. The link shall be entitled: "**New**: Releasing lynx and other nontargets from traps." Within one year of the effective date of this Decree (as defined below in Paragraph 24), the DNR shall prepare and make available on the "Trapping & furbearers" webpage an educational document on the proper way for trappers to subdue, handle, and release an inadvertently

4

trapped lynx. At this time, the DNR may remove the above-referenced link to pages 17-19 of the lynx avoidance brochure. The educational document shall recommend that trappers carry a catchpole and cable cutters to help release lynx and other nontarget species.

### VI. NO OBLIGATION TO TAKE ANY ACTION IN CONTRAVENTION OF LAW

11. No provision of this Decree shall be interpreted or constitute a commitment or requirement that the DNR take action in contravention of any other law or regulation, state or federal, substantive or procedural, including the state laws that govern rulemaking, Minn. R. ch. 14, and expedited emergency rulemaking under Minnesota law, Minn. Stat. § 84.027, subd. 13. In addition, the Parties recognize that the additional trapping restrictions set forth in Paragraph 6 may be challenged.

### VII. MODIFICATIONS

12. This Decree may be modified or terminated by the Court upon good cause shown by written stipulation between the Center and the DNR filed with and approved by the Court, or upon written motion filed by the Center or the DNR and granted by the Court. The DNR and the Center each retain the right to seek to modify the Decree for good cause shown.

### VIII. SCOPE AND EXPIRATION OF DECREE

13. If the DNR obtains an Incidental Take Permit ("ITP") for its trapping regulations, the DNR shall not be bound by the terms of this Decree during any period when the ITP is in effect. Instead, during any period when such an ITP is in effect, the DNR shall be bound by the terms of the ITP. An ITP is not in effect if it is vacated, stayed,

or enjoined by a court of competent jurisdiction, or withdrawn by the United States Fish and Wildlife Service ("USFWS").

14. If, pursuant to 16 U.S.C. § 1533(d), USFWS promulgates a rule ("4(d) Rule") addressing the incidental take of Canada lynx resulting from trapping activities, the DNR shall not be bound by the terms of this Decree during any period when such a 4(d) Rule is in effect in Minnesota. A 4(d) Rule is not in effect if it is vacated, stayed, or enjoined by a court of competent jurisdiction, or withdrawn by USFWS.

15. If the USFWS promulgates a rule removing the Canada lynx in Minnesota from protection under the ESA ("Delisting Rule"), the DNR shall not be bound by the terms of this Decree during any period when such a Delisting Rule is in effect. A Delisting Rule is not in effect if it is vacated, stayed, or enjoined by a court of competent jurisdiction, or withdrawn by USFWS. The requirements of this Consent Decree and Order shall only apply to that area identified in the USFWS critical habitat determination set forth in *Revised Designation of Critical Habitat for the Contiguous United States Distinct Population Segment of the Canada Lynx and Revised Distinct Population Segment Boundary*, 79 FR 54781, 54823-25, 54841, 54843 (2014), or any amended USFWS critical habitat determination. Nothing in this Consent Decree and Order precludes the DNR from amending Minn. R. 6234.1000, subp. 5 to reflect any such amendment of the USFWS critical habitat designation.

16. The DNR may seek from the Court an order terminating this Decree if any of the following actions are taken by USFWS: (a) issuance of an ITP to the DNR for its trapping regulations; (b) promulgation of a 4(d) Rule addressing the incidental take of

Canada lynx resulting from trapping activities; or (c) removal of Canada lynx from protection under the ESA. The DNR may also seek from the Court an order terminating this Decree for other good cause shown.

### IX. DISMISSAL OF CLAIMS AND ENFORCEMENT

17. Upon the Court's entry of this Decree, all claims alleged by the Center in the Complaint against the DNR shall be dismissed with prejudice.

18. Notwithstanding the dismissal of this action, the Court shall retain jurisdiction under 16 U.S.C. § 1540(g) until the termination of this Decree to enforce the terms and conditions of the Decree, to modify or terminate the Decree for good cause shown, and to resolve any disputes arising under this Decree.

### X. COVENANT NOT TO SUE

19. The Center covenants not to institute or participate in any suit or action against the DNR related to incidental take of Canada lynx from trapping for a period of seven years from the entry of this Decree. The Center expressly retains the right to bring litigation against USFWS challenging an ITP for Canada lynx issued to the DNR by USFWS.

### XI. ATTORNEYS' FEES AND COSTS

20. The DNR agrees to pay the Center $69,995.00 in full and complete satisfaction of any and all claims, demands, rights, and causes of action pursuant to the ESA Section 11(g)(4), 16 U.S.C. § 1540(g)(4), and other statute or common law theory, for any and all attorneys' fees and costs incurred in this litigation.

21. The DNR's payment as identified in Paragraph 20 above shall be accomplished by electronic funds transfer to the Center. The Center's counsel will provide the appropriate account number, tax identification, and other information needed to facilitate payment to counsel for the DNR. The DNR will make the payment within 60 days after the effective date of this Decree or the Center's counsel provides the necessary information to facilitate payment, whichever is later. The Center's counsel shall notify counsel for the DNR when payment is received.

22. The Center agrees that receipt of the full amount specified in Paragraph 20 above shall operate as a release of any and all claims for attorneys' fees and costs that the Center has incurred in this litigation.

23. The Center agrees to hold harmless the DNR in any further litigation, suit, or claim arising from the payment of the agreed-upon $69,995.00 settlement amount pursuant to Paragraph 20.

## XII.  GENERAL PROVISIONS

24. The effective date of this Decree shall be the date it is entered by the Court.

25. All correspondence concerning this Decree shall be delivered to the following contact persons.

As to Plaintiff:

Collette L. Adkins
Center for Biological Diversity
P.O. Box 595
Circle Pines, MN 55014-0595
(651) 955-3821
cadkins@biologicaldiversity.org

Marc D. Fink
Center for Biological Diversity
209 East 7th Street
Duluth, MN 55805
(218) 464-0539
mfink@biologicaldiversity.org

As to Defendant:

KEITH ELLISON
Attorney General
State of Minnesota

Peter J. Farrell
Assistant Attorney General
445 Minnesota Street, Suite 1400
Saint Paul, MN 55102
(651) 757-1424
peter.farrell@ag.state.mn.us

26. The Decree can be executed in counterparts.

27. The terms of this Consent Decree constitute the entire agreement of the Center and the DNR, and no statement, agreement or understanding, oral or written, which is not contained in this Decree shall be recognized or enforced.

28. No provision of this Decree shall be interpreted as an endorsement by the Center of the State of Minnesota's trapping regulations.

*SIGNATURES ON THE FOLLOWING PAGE*

**IT IS SO DECREED AND ORDERED. JUDGMENT SHALL BE ENTERED IN ACCORDANCE WITH THE FOREGOING CONSENT DECREE.**

_____     _____
Date                                                              Judge of District Court

**THE UNDERSIGNED PARTIES ENTER INTO AND APPROVE THIS CONSENT DECREE, AND BY THEIR SIGNATURES, THE UNDERSIGNED REPRESENT THAT THEY HAVE AUTHORITY TO BIND THE PARTIES THEY REPRESENT:**

| Center for Biological Diversity | DNR |
|---|---|
| /s/ Collette L. Adkins | /s/ David Olfelt |
| Collette Adkins, Senior Attorney | David Olfelt, Fish and Wildlife Director |
| Dated: 5/24/2022 | Dated: 5/24/2022 |